**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WISCONSIN**

MITCHELL MAES,

    Plaintiff,

  v.

CHARTER COMMUNICATION d/b/a,
SPECTRUM CABLE and DOES 1-10,
INCLUSIVE,

    Defendant.

Case No. 3:18-CV-00124-JDP

<u>**MEMORANDUM OF LAW IN SUPPORT OF**</u>
<u>**DEFENDANT CHARTER COMMUNICATIONS, INC.'S**</u>
<u>**MOTION TO DISMISS PLAINTIFF'S COMPLAINT**</u>

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................... 1

PROCEDURAL HISTORY AND FACTUAL BACKGROUND   ............................... 2

IMPACT OF THE SEMINAL *ACA INTERNATIONAL* DECISION........................ 2

ARGUMENT & CITATION TO AUTHORITIES ..................................................... 5

I.      Legal Standard. ........................................................................................... 5

II.     Plaintiff Fails to State a TCPA Claim Because His Allegations Are Conclusory, and
        His Only Factual Allegations Belie the Use of an ATDS................................. 6

CONCLUSION...................................................................................................... 9

## INTRODUCTION

If Plaintiff's Telephone Consumer Protection Act ("TCPA") claim stands, the doors to the federal courthouse would open to any person who alleges she received a single call on her cell phone from someone she does not know, such as a friend of a friend, regardless of how the call was made. In March of 2018, the U.S. Court of Appeals for the D.C. Circuit—in a unanimous opinion that vacated years of FCC precedent and is binding on this Court under the Hobbs Act—made clear that is not the law. Instead, to state a claim under the provision of the TCPA at issue here, a plaintiff must plead facts sufficient to plausibly suggest he was called with an "automatic telephone dialing system" ("ATDS"), defined under the statute as "equipment which has the capacity -- to store or produce telephone numbers to be called, *using a random or sequential number generator*; and to dial such numbers."

Plaintiff fails to plead any such facts here. Instead, Plaintiff admits that all calls at issue were intended to reach a *specific* person for a *specific* business purpose: to "collect a consumer debt allegedly owed by" an individual named "Nancy" (presumably a Charter customer who used to have Plaintiff's number). Plaintiff also states that when he answered the phone, he was greeted by a live Charter representative. Far from suggesting the use of a "random or sequential number generator"—or even automated technology—Plaintiff's factual allegations *belie* the use of an ATDS. Accordingly, Plaintiff cannot plausibly state a claim that Charter violated the TCPA any more than he can claim an uninvited call from his neighbor's smart phone violated the TCPA. And as the D.C. Circuit recently stated in its unanimous decision: "[i]t cannot be the case that every uninvited communication from a smartphone infringes federal law, and that nearly every American is a TCPA-violator-in-waiting, if not a violator-in-fact."

For these reasons and the others discussed herein, Charter seeks dismissal of Plaintiff's claim, with prejudice, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## PROCEDURAL HISTORY AND FACTUAL BACKGROUND

Plaintiff filed this action on February 22, 2018 against Charter, asserting one count for violation of the TCPA.  (Dkt. 1.)  In support, Plaintiff alleges Charter placed an unidentified number calls to his cellular telephone using an ATDS or "predictive dialer."  (Dkt. 1, ¶¶ 7-8.) Plaintiff further alleges that, upon answering the calls, he "heard silence" before speaking with a Charter "representative" (*i.e.*, a live person).  (Dkt. 1, ¶¶ 9, 16.)  And while Plaintiff also lodges the bald legal conclusion that "Defendants' [*sic*] Predictive Dialers [*sic*] have the capacity to store or produce telephone numbers to be called, using a random or sequential number generator," he provides no facts in support of that conclusion.  (Dkt. 1, ¶ 17.)  Instead, the only facts Plaintiff alleges show just the opposite—instead of the calls being made randomly or sequentially, Charter placed all of these calls to the same number for a specific business purpose:  to "attempt to collect a consumer debt allegedly owned by Nancy."  (Dkt. 1, ¶¶ 7-8, 13.)

As explained herein, Plaintiff's allegations are conclusory and based on recently-vacated FCC Orders.  And the only remaining *factual* allegation in Plaintiff's Complaint shows that an ATDS was *not* used.  As such, Plaintiff's claim is not plausible as a matter of law, and this action should be dismissed with prejudice.

## IMPACT OF THE SEMINAL *ACA INTERNATIONAL* DECISION

In relevant part, the TCPA prohibits calling a cellular telephone with an ATDS unless the "called party" has first consented to receive such calls.  47 U.S.C. § 227.  An ATDS is defined as "equipment which has the capacity -- to store or produce telephone numbers to be called, *using a random or sequential number generator*; and to dial such numbers."  47 U.S.C. § 227(a)(1) (emphasis added).

As this language suggests, the purpose of the TCPA is to prohibit telemarketers from calling random persons *en masse*—not to prohibit companies from calling specific numbers

provided by consenting customers for legitimate business purposes.  *See* Pub L. No. 102-243 §
2(5) (1991).  Through numerous declaratory rulings, however, the FCC gradually expanded the
TCPA far beyond its statutory language and intended reach.  For example, in its 2003, 2008, and
2015 Orders, the FCC held that the statutory definition of an ATDS includes "predictive dialers"—
dialing equipment that can make use of algorithms to "assist[] telemarketers in predicting when a
sales agent will be available to take calls."  *ACA Int'l v. FCC*, 885 F.3d 687, 701 (D.C. Cir. 2018).[1]
The FCC also held in its 2015 Order that a system is an ATDS if it merely has the *potential* capacity
to generate and dial random or sequential numbers—whatever that means—even though the word
"potential" is nowhere in the statute.  2015 Order at 7975-76.

    After dozens of parties challenged these FCC rulings under the Administrative Procedures
Act (also known as the "Hobbs Act"), on March 16, 2018, the D.C. Circuit vacated them—in a
unanimous 51-page opinion that was more than two years in the making.  First, the D.C. Circuit
set aside the FCC's interpretation of the statutory term "ATDS."  *ACA Int'l*, 885 F.3d at 692.  It
held that the FCC's determination that calling equipment qualifies as an ATDS based on "'its
potential functionalities' or 'future possibility'" of dialing random or sequential numbers, *id*. at
695, was an "unreasonable, and impermissible, interpretation" of the TCPA.  *Id.* at 697; *see also*
*D.C. Circuit Dials Back on FCC's Broadening of TCPA*, 21 No. 19 Consumer Fin. Services L.
Rep. 1 (2018) ("One of the most problematic interpretations rejected by the decision was the 2015
order's pronouncement that an ATDS included telephone systems that had the potential capacity

---

[1]  *See also In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, et al.,*
*Declaratory Ruling and Order,* 30 F.C.C. Rcd. 7961, 7972-73 (2015) ("2015 Order"); *In the*
*Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, Declaratory*
*Ruling and Order*, 23 F.C.C. Rcd. 559, 566 (2008) ("2008 Order"); *In Re Rules & Regulations*
*Implementing the Tel. Consumer Prot. Act of 1991, Declaratory Ruling and Order,* 18 F.C.C. Rcd.
14014, 14017 (2003) ("2003 Order").

to operate as an ATDS, even if the system was not presently used as an autodialer."). The D.C. Circuit also rejected the FCC's interpretation of "which functions qualify a device as an autodialer," specifically vacating the FCC's prior findings in 2003, 2005, and 2015 that a predictive dialer qualifies as an ATDS even if it does not generate random or sequential numbers, as the plain language of the statute requires. *ACA Int'l*, 885 F.3d at 701-703.[2] Notably, the commissioners who dissented from the 2015 Order—who now make up a majority of the FCC— praised the *ACA* decision as a proper correction of "regulatory overreach." *See, e.g.*, *Press Release*, FCC, Chairman Pai Statement on D.C. Circuit Decision Curbing Regulatory Overreach (Mar. 16, 2018), available at https://apps.fcc.gov/edocs_public/attachmatch/DOC-349765A1.pdf.

Following *ACA*, the FCC's offending interpretations of the statutory term "ATDS" and cases relying on those interpretations—*i.e.*, the vast majority of decisions addressing what an ATDS is—are no longer good law. *See e.g.*, *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 467 (6th Cir. 2017) (explaining D.C. Circuit's decision to strike FCC's solicited fax rule is "binding outside of the [D.C. Circuit]" under the Hobbs Act) (cits. omitted).[3] Instead, as the few post-*ACA* decisions and judicial pronouncements make clear, the

---

[2]  The D.C. Circuit also found the FCC's "expansive understanding of 'capacity'" impractical, suggesting the "mere possibility of adding those features would not matter unless they were downloaded and used to make calls." *ACA Int'l*, 885 F.3d at 704. While the D.C. Circuit declined to decide the question, the plain language of the statute only imposes liability for "mak[ing] a[] call . . . *using*" an ATDS, not making a call with equipment that may be capable of acting as an ATDS at some point in the future.  47 U.S.C. § 227(a)(1).

[3]  *CE Design, Ltd. v. Prism Bus. Media, Inc.*, 606 F.3d 443, 450 (7th Cir. 2010) ("In passing the Hobbs Act, Congress vested the power of agency review of final FCC orders exclusively in the courts of appeals," which allows "uniform, nationwide interpretation of the federal statute by the centralized expert agency created by Congress" to enforce the TCPA.); *Peck v. Cingular Wireless, LLC*, 535 F.3d 1053, 1057 (9th Cir. 2008); *Alpha Tech Pet Inc. v. LaGasse, LLC*, No. 16-C-4321, 2017 WL 5069946, at *2 (N.D. Ill. Nov. 3, 2017) (explaining D.C. Circuit's decision to strike FCC's solicited fax rule is "binding outside of the [D.C. Circuit]") (cits. omitted).

plain language of the statutory text controls.  *See Marshall v. CBE Grp., Inc.*, No. 2:16-cv-02406-GMN-NJK, 2018 WL 1567852, at *5 (D. Nev. Mar. 2018) (entering judgment in defendant's favor absent any use of "random or sequential number generator" because post-*ACA*, "the statute's language" controls); *see also* Tr. of Hrg. on Impact of *ACA Int'l v. FCC* at 6:22-24, *Mejia v. Time Warner Cable, Inc., et al.*, No. 15-cv-6445 (S.D.N.Y. Apr. 27, 2018) ("I conclude that defendants are correct that following the DC Circuit's decision, the plain language of the statutory definition of an ATDS now controls.").[4]  As shown below, Plaintiff's claim fails under the TCPA's plain language.

## ARGUMENT & CITATION TO AUTHORITIES

### I.   LEGAL STANDARD.

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must contain sufficient *factual allegations* to "state a claim for relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads *factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added).  As such, courts must disregard "legal conclusions and conclusory allegations merely reciting the elements of the claim," which "are not entitled to th[e] presumption of truth."  *McCauley v. City of Chicago*, 671 F.3d 611, 616-17 (7th Cir. 2011) (cits. omitted).  The same is true of contradictory allegations.  *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011).  Thus, the court must consider whether "the plaintiff's factual allegations are unrealistic," if "some contradict others," or if they are "speculative in the sense of implausible and ungrounded."  *Id*.  Then the court must "determine whether the remaining factual allegations 'plausibly suggest an entitlement to relief.'"

---

[4]  A true and correct copy of this hearing transcript is attached hereto as Exhibit A.

*McCauley*, 671 F.3d at 616-17. "If the allegations give rise to an 'obvious alternative explanation,' then the complaint may 'stop[] short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (cits. omitted).

Where, as here, a plaintiff merely recites the statute, offers factual allegations that belie his claims, and does not otherwise "nudge[] his claims across the line from conceivable to plausible, his complaint must be dismissed." *Id.* at 570; *see also Atkins*, 631 F.3d at 832.

## II.   PLAINTIFF FAILS TO STATE A TCPA CLAIM BECAUSE HIS ALLEGATIONS ARE CONCLUSORY, AND HIS ONLY FACTUAL ALLEGATIONS BELIE THE USE OF AN ATDS.

The TCPA prohibits, in relevant part, using an ATDS to call a cellular phone without the consent of the called party. The statute—which controls post-*ACA*—defines ATDS as "equipment which has the capacity -- to store or produce telephone numbers to be called, *using a random or sequential number generator*; and to *dial such numbers*." 47 U.S.C. § 227(a)(1) (emphasis added). Thus, in order to state a claim for a TCPA violation based on the use of an ATDS post-*ACA*, a plaintiff must allege facts that give rise to the plausible inference that Charter called him with equipment that randomly or sequentially generates and dials numbers. Plaintiff fails to do so here, and his allegations establish he cannot.

First, Plaintiff simply regurgitates the statutory text by alleging that Charter "called Plaintiff on his cellular telephone using an ATDS or predictive dialer," which has the "capacity to store or produce telephone numbers to be called, using a random or sequential number generator." (Dkt. 1, ¶¶ 8, 13, 17.) These allegations are nothing more than a conclusory parroting of the statutory language, and the Court must therefore ignore them in determining whether Plaintiff has stated a claim under the TCPA. *See Iqbal,* 556 U.S. at 678; *Hanley v. Green Tree Servicing, LLC,*

934 F. Supp. 2d 977, 983 (N.D. Ill. 2013) (dismissing complaint because the mere recitation of "facts mimicking the elements of a TCPA claim is insufficient to state a claim").[5]

Next, Plaintiff alleges that Charter's systems "have some earmarks of a Predictive Dialer" because when Plaintiff answered the phone, "he was met with a period of silence before Defendant's telephone system would connect him to the next available representative."  (Dkt. 1, ¶ 16.)  Although this allegation may suggest an inattentive live caller, it falls far short of generating an inference that the calls originated from equipment with the requisite capacity to dial random or sequential numbers.  And if this allegation were enough to state a claim, Plaintiff could file an action against any individual for making an uninvited call from a cell phone.  Such an overly-broad interpretation of the TCPA is *precisely what the D.C. Circuit made clear would be impermissible* in its landmark *ACA* decision.  *See ACA Int'l,* 885 F.3d at 698 ("It cannot be the case that every uninvited communication from a smartphone infringes federal law, and that nearly every American is a TCPA-violator-in-waiting, if not a violator-in-fact.").

Even more, this specific "factual" allegation—that a period of silence is indicative of a "predictive dialer"—is unabashedly and admittedly based on the FCC's prior Orders regarding predictive dialers, *which were vacated by the D.C. Circuit* two months ago.  *ACA Int'l,* 885 F.3d at 701-703 (vacating the FCC's "lack of clarity about which functions qualify a device as an autodialer" because it failed "to satisfy the requirement of reasoned decision making").  Thus, Plaintiff cannot rely on any "period of silence" to plausibly allege that Charter violated the TCPA, as a matter of law.  *See e.g., Sandusky Wellness Ctr., LLC,* 863 F.3d at 467; *Peck,* 535 F.3d at 1057

---

[5] *See also Johansen v. Vivant, Inc.,* No. 12-C-7159, 2012 WL 6590551, at *3 (N.D. Ill. Dec. 18, 2012) (dismissing TCPA claim because the use "of an ATDS and the pre-recorded nature of the messages are not legal conclusions, they are facts" and "when a fact is itself an element of the claim, as is the case here, it is not sufficient to recite that fact verbatim without other supporting details").

(holding district court committed reversible error by basing its motion to dismiss ruling on FCC's interpretation of provision in Federal Communications Act after it was vacated by Eleventh Circuit); *Alpha Tech Pet Inc.*, 2017 WL 5069946, at *2.

But it is Plaintiff's last and core factual admission that sounds the death-knell to Plaintiff's TCPA claim: that Charter made every single call at issue to a specific number for a specific purpose—"to collect a consumer debt allegedly owed by Nancy."  (Dkt. 1, ¶ 7.)  There is nothing random or sequential about calls targeted to a specific phone number to collect on a specific account from an identifiable individual (presumably one of Charter's subscribers, who provided her phone number to Charter before it was disconnected and reassigned to Plaintiff).  Instead, such "allegations suggest direct targeting that is inconsistent with the sort of random or sequential number generation required for an ATDS."  *Weisberg v. Stripe, Inc.*, No. 16-CV-00584-JST, 2016 WL 3971296, at *3 (N.D. Cal. July 25, 2016) (dismissing TCPA claim); *see also Duguid v. Smith v. Aitima Med. Equip., Inc.*, No. ED-CV-1600339-ABD-TBX, 2016 WL 4618780, at *6 (C.D. Cal. July 29, 2016) (granting dismissal with prejudice because allegations "suggest that the calls were directed at certain individuals and not randomly generated by an automated device" and therefore "go against an inference that an ATDS was used"); *Duguid v. Facebook, Inc.,* No. 15-CV-00985-JST, 2016 WL 1169365, at *5 (N.D. Cal. Mar. 24, 2016) (same).

For all these reasons, Plaintiff's TCPA claim must be dismissed.  And given that Plaintiff's core factual allegations belie the use of an ATDS, dismissal should be with prejudice.  *See e.g., Facebook, Inc.,* 2016 WL 1169365, at *5; *Guise v. BWM Mortg., LLC*, 377 F.3d 795, 797 (7th Cir. 2004) (affirming dismissal without leave to amend TILA claim and disregarding allegations inconsistent with the original pleading); *Holman v. Indiana*, 211 F.3d 399, 407 (7th Cir. 2000) (affirming dismissal and finding that "while we must draw *reasonable* inferences in the Holmans' favor, we should not draw inferences that while theoretically plausible are inconsistent with the

pleadings"); *Boyer v. Weyerhaeuser Co.*, 39 F. Supp. 3d 1036, 1044 (W.D. Wis. 2014) (dismissing complaint with prejudice in light of contradictory allegations because "there is no way for plaintiffs to 'unring' this bell by amendment") *citing Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008) ("A plaintiff pleads himself out of court when it would be necessary to contradict the complaint in order to prevail on the merits.").[6]

## CONCLUSION

As explained above, Plaintiff's allegations are conclusory, rely on vacated FCC Orders, and—most importantly—belie any claim that Charter used an ATDS. Consequently, his TCPA claim fails as a matter of law. As such, Charter respectfully requests that the Court grant its Motion and dismiss Plaintiff's TCPA claim with prejudice.

DATED: May 11, 2018.

Respectfully submitted,

**Von Briesen & Roper, s.c.**

By:   */s/Maria DelPizzo Sanders*_____
        Maria DelPizzo Sanders,
        Wisc. Bar No. 1031037
        msanders@vonbriesen.com
        788 North Jefferson Street, Suite 500
        Milwaukee, Wisconsin 53202
        Direct: (414) 221-6652
        Fax: (414) 249-2634

        and

---

[6] *See also, e.g.*, *Neptune Fireworks Co. v. Ahern*, No. 89 C 5074, 1995 WL 311395, at *8 (N.D. Ill. May 18, 1995) (dismissing Section 1983 claims where "conclusions in the pleading that the individual defendants were 'policy makers' for Cook County are unsupported by any factual allegations and contradict the premise of the complaint that the individuals were acting contrary to state law").

**KABAT CHAPMAN & OZMER LLP**

By:   */s/Jessica Gallegos*_____
      Jessica D. Gallegos
      GA Bar No. 759709
      (admitted *pro hac vice*)
      jgallegos@kcozlaw.com
      171 17th Street NW, Suite 1550
      Atlanta, Georgia 30363
      Telephone: (404) 400-7300
      Facsimile: (404) 400-7333

      *Counsel for Defendant Charter Communications*
      *d/b/a Spectrum Cable*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on May 11, 2018, I filed the foregoing **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT CHARTER COMMUNICATIONS, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT** with the Clerk of Court using the CM/ECF system which will send a notice of electronic filing to the following counsel of record in this action:

Amy L. Cuellar, Esq.
**LEMBERG LAW, LLC**
43 Danbury Road, 3rd Floor
Wilton, Connecticut 06897
acueller@lemberglaw.com

*Counsel for Plaintiff Mitchell Maes*

*/s/Jessica Gallegos*
Jessica D. Gallegos
GA Bar No. 759709
(admitted *pro hac vice*)

*One of the Attorneys for Defendant Charter Communications d/b/a Spectrum Cable*