IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MITCHELL MAES,

                Plaintiff,

v.

CHARTER COMMUNICATION d/b/a
SPECTRUM CABLE and DOES 1-10

                Defendants.

OPINION and ORDER

18-cv-124-jdp

---

Plaintiff Mitchell Maes alleges that defendant Charter Communication repeatedly called him using an autodialer in violation of the Telephone Consumer Protection Act (TCPA). Dkt. 1. Defendants move to dismiss Maes's claim under Federal Rule of Civil Procedure 12(b)(6), contending that Maes has not alleged facts sufficient to show that Charter used an autodialer. Dkt. 9.

This case raises an interesting question regarding which definition of autodialer the court should apply. The term autodialer is defined in both the TCPA itself and through rules promulgated by the Federal Communications Commission. The FCC's most recent definition comes from a 2015 order, but earlier this year that definition was struck down by the Court of Appeals for the D.C. Circuit in *ACA International v. FCC*, 885 F.3d 687 (D.C. Cir. 2018). Since then, courts have disagreed about whether the scope of *ACA International* is limited the 2015 FCC order or also applies to prior FCC rulings from 2003, 2008, and 2012. Because Maes's allegations are based on a definition of autodialer promulgated by the FCC in 2003, Charter contends that his claim fails if the 2003 order is no longer valid.

After reviewing *ACA International* and the decisions interpreting it, the court concludes that the 2003 FCC order is still valid, and it will deny Charter's motion to dismiss. Nothing in

*ACA International* indicates that the court of appeals intended to strike down the 2003 order. Applying the definition of autodialer promulgated in the 2003 order, the court finds that Maes plausibly alleges that Charter used an autodialer.

ALLEGATIONS OF FACT

The court draws the following facts from Maes's complaint, Dkt. 1, and accepts them as true for the purpose of deciding Charter's motion. *Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016).

Around August 2017, Charter began calling Maes on his cell phone. Charter's representatives told Maes that they were attempting to collect debt from a person named "Nancy." Maes is not Nancy, and he said so to Charter's representatives. Maes asked Charter to stop calling him. Despite Maes's request, Charter continued to call Maes. Maes does not state how many times Charter called him, but he alleges that he told multiple Charter representatives that he wanted the calls to stop and that Charter ignored his request.

Charter called Maes using a predictive dialer, a piece of equipment used in call centers to automatically dial phone numbers and connect representatives to customers that answer the phone. Maes states that when he answered phone calls from Charter, he heard dead air before the phone system connected him with a representative.

ANALYSIS

Maes is suing Charter under 47 U.S.C. § 227(b)(1)(A)(iii), which prohibits making "any call . . . using any automated telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service." The sole question raised in Charter's motion to

dismiss is whether Maes has adequately alleged that Charter used an "automatic telephone dialing system," or autodialer, to call him. This question has two parts. First, the parties debate what an "automatic telephone dialing system" is. Charter says that the controlling definition is provided in the statute; Maes says that the court is bound by broader definitions found in FCC orders. Second, Charter contends that Maes does not allege facts sufficient to plausibly suggest that Charter used any type of automatic dialing equipment. The court will consider each argument in turn.

## A. Definition of "automatic telephone dialing system"

### 1. Statutory and regulatory definitions

The TCPA defines "automated telephone dialing system" as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." *Id.* § 227(a)(1). Charter contends that Maes cannot meet this definition of autodialer because he does not allege that Charter used a device that has the capacity to dial "random or sequential" phone numbers.

Maes contends that under the FCC's interpretation of the statute, he does not have to show that Charter's device dialed "random or sequential" numbers. The general rule is that courts are bound by the FCC's interpretation of the TCPA, even if the court believes that the agency's interpretation is clearly wrong. 28 U.S.C. § 2342(1). District courts have no authority to invalidate an FCC order, but a federal appellate court can do so under limited circumstances. 28 U.S.C. § 2344; *see also Blow v. Bijora, Inc.*, 855 F.3d 793, 802 (7th Cir. 2017).

Maes relies on a 2003 order in which the FCC ruled that the TCPA's regulation of autodialers included any device that is a "predictive dialer," which is "equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in

predicting when a sales agent will be available to take calls." *Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14091–93 ¶¶ 131-33 (2003). These devices can be identified by the person answering the phone, because they sometimes result in a moment of silence before the person is connected with a telemarketer. *Id.*, ¶ 8 n.31. The FCC recognized that not all predictive dialers have the capacity to dial random or sequential numbers, but it reasoned that Congress intended for the TCPA to adapt to changes in technology. *Id.*, ¶ 132. Telemarketers in the past may have used equipment to create and dial arbitrary 10-digit numbers, but it is now far more cost effective for telemarketers to use curated lists of numbers. *Id.* Nevertheless, even as the technology evolved, the basic function remained the same—the capacity to dial numbers without human intervention. *Id.* Thus, a device may qualify as an autodialer even if it does not generate random or sequential numbers. The FCC reaffirmed this order in 2008 and 2012. *Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 FCC Rcd. 559, 566 ¶¶ 12–14. (2008); *Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 15391, 15399 n.5 (2012).

2. *ACA International*

The FCC considered the definition of an autodialer again in 2015. *Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961 (2015). The court of appeals for the D.C. Circuit vacated the definition of autodialer found in the 2015 order in *ACA International v. FCC*, 885 F.3d 687 (D.C. Cir. 2018). The parties to this case agree that *ACA International* is binding on this court. *See Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 467 (6th Cir. 2017); *Pinkus v. Sirius XM Radio, Inc.*, 319 F. Supp. 3d 927, 932 (N.D. Ill. 2018). But they disagree whether *ACA International* also invalidated the 2003 FCC definition of autodialer that Maes relies upon.

In *ACA International*, the court of appeals reasoned that the statutory definition of autodialer raised two questions: (1) when does a device have the "capacity" to perform the two enumerated functions; and (2) what precisely are those functions? *ACA Int'l*, 885 F.3d. at 695. It struck down the FCC's treatment of both questions.

First, the court held that the FCC unreasonably interpreted the meaning of the word "capacity" in § 227(a)(1). *ACA Int'l*, 885 F.3d at 698. Because the 2015 order used a definition of capacity not found in prior orders, this portion of the court's ruling is not relevant to the validity of the 2003 definition.

Second, the court found that the FCC's description of the functions of an autodialer in the 2015 order was contradictory. On the one hand, the FCC ruled that to qualify as an autodialer, equipment must have the capacity to generate and dial random or sequential numbers. *Id.* at 701–02. But at the same time, the FCC reaffirmed its prior rulings on predictive dialers, and those prior rulings had unequivocally held that a predictive dialer falls under the statute even if it cannot be programmed to generate random or sequential numbers. *Id.* at 702. The court explained that although either interpretation of the statute may be correct, the FCC could not choose both at the same time:

> So which is it: does a device qualify as an ATDS only if it can generate random or sequential numbers to be dialed, or can it so qualify even if it lacks that capacity? The 2015 ruling, while speaking to the question in several ways, gives no clear answer (and in fact seems to give both answers). It might be permissible for the Commission to adopt either interpretation. But the Commission cannot, consistent with reasoned decisionmaking, espouse both competing interpretations in the same order.

*Id. at* 702–03.

In the short time since *ACA International* was decided, many courts have considered the question whether the decision implicitly invalidated the 2003 order. Some courts have held

5

that *ACA International* left the FCC's prior rulings intact.[1] About the same number of courts have held the opposite.[2] Having reviewed all these decisions, this court is persuaded that the prior FCC rulings are still valid.

According to *ACA International*, the flaw in the 2015 ruling was not that it reaffirmed the 2003 order, but that it both reaffirmed the 2003 order and contradicted it. The court of appeals rightfully held that the FCC could not issue contradictory orders. But the court of appeals explicitly stated that it was not ruling on which interpretation of the TCPA was correct, so it is not reasonable to infer that it was reaching back and invalidating all prior FCC orders that expressed a particular interpretation of the TCPA. *Reyes v. BCA Financial Services, Inc.*, 312 F. Supp. 3d. 1308, 1321–22 (S.D. Fla. 2018) ("What *ACA International* did was to reject the FCC's have-your-cake-and-eat-it-too approach to the questions before it . . . but what *ACA International* did **not** do is endorse one interpretation over the other, even implicitly.") (emphasis in original). Although the court of appeals may have expressed doubt about the previous orders, the court did not expressly reject them. In the absence of such a rejection, district courts do not have the authority to impose their own interpretation of the TCPA.

---

[1] *See e.g. Maddox v. CBE Grp., Inc.*, No. 1:17-CV-1909-SCJ, 2018 WL 2327037 (N.D. Ga. May 22, 2018); *Swaney v. Regions Bank*, No. 2:13-cv00544-JHE, 2018 WL 2316452 (N.D. Ala. May 22, 2018); *Gary v. TrueBlue, Inc.*, No. 17-cv-10544, 2018 WL 3647046 (E.D. Mich. Aug. 1, 2018); *Ammons v. Ally Fin., Inc.*, No. 3:17-CV-00505, 2018 WL 3134619 (M.D. Tenn. June 27, 2018); *Somogyi v. Freedom Mortg. Corp.*, No. CV 17-6546 (JBS/JS), 2018 WL 3656158 (D.N.J. Aug. 2, 2018).

[2] *Marks*, 904 F.3d 1041. *See also Sessions v. Barclays Bank Delaware*, 317 F.Supp.3d 1208 (N.D. Ga. 2018); *Gary v. TrueBlue, Inc.*, No. 17-cv-10544, 2018 WL 3647046 (E.D. Mich. Aug. 1, 2018); *Gonzalez v. Ocwen Loan Servicing, LLC*, No. 5:18-CV-340-OC-30PRL, 2018 WL 4217065 (M.D. Fla. Sept. 5, 2018); *Diana Fleming v. Associated Credit Services, Inc.*, No. CV163382KMMAH, 2018 WL 4562460, at *8 (D.N.J. Sept. 21, 2018)

Charter asks this court to follow *Pinkus v. Sirius XM Radio, Inc.*, 319 F. Supp. 3d 927 (N.D. Ill. 2018), a case which reached a contrary conclusion and which Charter asks this court to follow. But the court is not persuaded by *Pinkus* for several reasons. First, it overstates the holding of *ACA International* when it says that the "D.C. Circuit overturned the FCC's decision in the 2015 Declaratory Ruling to 'reaffirm[] . . . the notion that a device can be considered an autodialer even if it has no capacity itself to generate random or sequential numbers (and instead can only dial from an externally supplied set of numbers).'" *Id.* at 933. (quoting *ACA Int'l*, 885 F.3d at 702) (alterations in original). The text that *Pinkus* quotes from is not the holding. It is one example from a list of examples of *inconsistencies* found in the 2015 order. *See ACA Int'l*, 885 F.3d at 702. Again, the holding was not that a particular definition was wrong, but that the 2015 order contradicted itself.

*Pinkus* is also incorrect that the 2003 order is necessarily invalid because it shares the same flaws as the 2015 order. *Pinkus* states that, like the 2015 order, the 2003 order ruled that some predictive dialers dial random numbers and some do not. *Id.* at 934. But this is a conflation of two different issues. Although the 2003 order recognized that there were two types of predictive dialers, it ruled that *both* types fell under the definition of autodialer. *ACA Int'l*, 885 F.3d at 702. In the 2015 order, the FCC added rules that seemingly excluded one of these types, while at the same time reaffirming that the 2003 ruling was valid. *Id.* So the flaw in the 2015 ruling was that it added a new regulation that made it *unlike* the 2003 order.

Charter also contends that the court of appeals must have ruled on the 2003 order, as well as the 2015 order, because the court ruled that it had jurisdiction to review it. This position was also adopted in *Marks v. Crunch San Diego*, 904 F.3d 1041 (9th Cir. 2018), a case published after the parties here completed their briefing and which is thus far the only appellate case to

7

rule upon the validity of the prior FCC orders.[3] However, the discussion of jurisdiction in *ACA International* is ambiguous—the court of appeals actually states two grounds for jurisdiction and only one of them would provide jurisdiction to review the 2003 order. *ACA Int'l*, 885 F.3d at 701 (stating that either (1) the FCC reopened consideration of the 2003 order and the court had jurisdiction to review it *or* (2) the 2015 order contains clarifications not found in prior rulings and the court has jurisdiction to review it even if it cannot review the prior rulings). But assuming that Charter is correct and the court of appeals invoked jurisdiction to review the 2003, 2008, and 2012 orders, the court of appeals did not actually review them. Its analysis and holding were limited to the 2015 order: it looked at the ways in which the 2015 order expanded upon prior rulings, and then struck down those expansions as unreasonable. Although it discussed the content of the 2003 order, it did so only to highlight its contradictions with the new rules.

Charter's final argument relies on a request for comment the FCC issued in response to *ACA Int'l*.[4] Charter says that the FCC "explicitly recognized that its prior precedent on what qualifies a device as an ATDS was vacated." Dkt. 17, at 6. Charter also points out that power

---

[3] Charter contends that another appellate decision, *Dominguez v. Yahoo, Inc.*, 894 F.3d 116 (3rd Cir. 2018), also held that the prior FCC orders were invalid, but that case held only that *ACA International* vacated the 2015 order. *Dominguez* was ambiguous about whether the prior FCC rulings were also invalidated, as can be seen in the contradictory ways in which other courts cite it. *Compare Marks*, 904 F.3d at 1049 (citing *Dominguez* as authority that the prior FCC rulings are vacated), *with Ramos v. Hopele of Fort Lauderdale, LLC*, --F. Supp. 3d.--, No. 17-62100-CIV, 2018 WL 4568428, at *2 (S.D. Fla. Sept. 20, 2018) (citing *Dominguez* as authority that the prior FCC rulings are still binding).

[4] *Consumer & Governmental Affairs Bureau Seeks Comment on Interpretation of the Tel. Consumer Prot. Act in Light of the D.C. Circuit's Aca Int'l Decision*, 02-278, 2018 WL 2253215 (OHMSV May 14, 2018). *See also Consumer & Governmental Affairs Bureau Seeks Further Comment on Interpretation of the Tel. Consumer Prot. Act in Light of the Ninth Circuit's Marks v. Crunch San Diego, LLC Decision*, 02-278, 2018 WL 4801356 (OHMSV Oct. 3, 2018).

has shifted within the FCC, and the dissenters to the 2015 order have taken control of the agency, suggesting that the FCC will soon promulgate rules that define autodialer more restrictively. But this argument is undeveloped and unpersuasive. Charter does not point to any language in the request for comment stating that the commission's old rulings are invalid and Charter cites no authority that the FCC has the power to invalidate a rule in the context of a request for comment. Even assuming that the FCC will promulgate new rules that are in Charter's favor, Charter has made no argument regarding whether the rules would apply retroactively. *See Beller v. Health & Hosp. Corp. of Marion Cty., Indiana*, 703 F.3d 388, 391 (7th Cir. 2012) (substantive regulatory changes are not retroactive unless Congress has given the agency express authority to create retroactive rules and the agency uses language expressly requiring retroactive application). Regardless what the FCC does in the future, this court must apply the law as it exists today.

   3. **Conclusion**

This court concludes that it is still bound by the FCC's 2003 ruling that a predictive dialer is an autodialer, even if the device does not dial random or sequentially generated numbers. But even if Charter were correct that *ACA International* vacated the 2003 order, it is not clear that the court would adopt Charter's proposed construction of the TCPA. For example, in *Marks*, the court concluded that the 2003 ruling on predictive dialers was no longer valid, but the court's construction of the statutory definition of autodialer was essentially the same as the definition found in the FCC's 2003 order. *Marks*, 904 F.3d at 1051 (holding that under the statutory language, equipment can qualify as an autodialer even if it does not have the capacity to generate random or sequential numbers); *but see Pinkus*, 319 F. Supp. 3d at 938

9

(holding the opposite). Because the court has concluded that the 2003 order remains in effect, it will not decide whether the statutory language should be construed differently.

**B. Adequacy of Maes's allegations**

Having determined that the 2003 FCC order still applies, the court now turns to the allegations found in Maes's complaint. Federal Rule of Civil Procedure 8 requires only "adequate notice of the scope of, and basis for" the asserted claims. *See Avila v. CitiMortgage, Inc.*, 801 F.3d 777, 783 (7th Cir. 2015) (citing *Vincent v. City Colleges of Chi.*, 485 F.3d 919, 923 (7th Cir. 2007)). On a motion for dismissal under Rule 12(b)(6), the court must construe the complaint "in the light most favorable to the nonmoving party, accept well-pleaded facts as true, and draw all inferences in [plaintiff's] favor." *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010).

To prove his claim under the TCPA, Maes must establish three elements: (1) Charter placed a call to Maes's cell phone; (2) using an autodialer; (3) without Maes's express consent. 47 U.S.C. § 227(b)(1)(A)(iii). Maes alleges that Charter called his cell phone multiple times, after he explicitly told Charter not to call him. Each time Maes answered, he heard a period of silence before he was connected with a Charter representative. Dead air after answering the phone is an indicator that the caller is using a predictive dialer, *Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, ¶ 8 n.31, so it is plausible that Charter used a predictive dialer to call Maes. Because a predictive dialer is an autodialer under the TCPA, Maes states a claim for relief.

ORDER

IT IS ORDERED that defendant Charter Communication's motion to dismiss, Dkt. 9, is DENIED.

Entered October 30, 2018.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge